230 So.2d 231

**ALABAMA STATE MILK CON-
TROL BOARD**

**v.**

**PURE MILK COMPANY d/b/a Barber Pure
Milk Company of Birmingham.**

**3 Div. 375.**

Supreme Court of Alabama.

Jan. 8, 1970.

————◆————

Louis G. Greene, Montgomery, for ap-
-pellant.

Macbeth Wagnon, Jr., Birmingham, for
appellee.

SIMPSON, Justice.

This case grew out of the following:

The Alabama State Milk Control Board
directed a notice to the appellee in which it
required the appellee to show cause why its
license should not be revoked for improper
allocation of its producer's milk and im-
proper computation of the producer pay-
rolls. The appellee is a milk distributor as
defined in Title 22, § 206, Code as Amend-
ed, and is a licensee of the Alabama State
Milk Control Board.

Pursuant to the authority contained in
the act establishing the Alabama Milk Con-
trol Board, the Board has established a
system of classification of and payment for
milk pursuant to which producers are paid
for the milk they deliver to a distributor at
different prices according to the way that
the distributor uses the milk he receives.
The presently effective classifications of
milk are established by official Order No.
2-67, which has been in effect since March

16, 1967. Under this order there are three classes of milk: · Class I, Class II, and U. S. Government Contract Milk. A related order, official Order No. 3–67, also effective since March 16, 1967, establishes the prices distributors must pay to producers for milk used in the different classifications established by official Order No. 2–67. Order No. 2–67 defines Class I and Class II milk as follows:

"Class I Milk:—is that quantity of milk purchased during any pay period from producer or producer-distributor or distributors by a producer-distributor or distributor which. is sold in or used in fluid milk form except United States Government Contract milk.

\* &ast; &ast; . &ast; &ast; &ast;

"Class II Milk:—is that quantity of milk purchased during any pay period · from producers by producer-distributors or distributors which is in excess of Class I milk as defined above."

Official Order No. 3–67 establishes a price to producers for Class I milk of $6.63 per hundredweight. Official Order No. 3–67 establishes the price to producers for Class II milk by a formula based on the Chicago market price for butter and milk powder. For the month of October, 1967, this formula resulted in a price of $3.91 for Class II milk.

On December 18, 1967 the Alabama State Milk Control Board issued its official Notice No. 1704 to the appellee directing it to comply with the Board's requirement within ten days, the requirements being to pay a list of producers the amounts indicated by their names, such list being attached to this notice. The notice provided that failure to comply with the notice would necessitate prosecution as provided by law. No hearing before the order was issued was afforded the petitioner. From this order of the Board the case was taken by petition for writ of certiorari to the Circuit Court of Montgomery County, which petition contested the sufficiency

and adequacy of the notice given by the Board to Barber.

The Board in no way contested that the notice was inadequate. The Board contended that it had proceeded as it always had done and that no one had ever questioned the adequacy of the notice before. The Board concedes in brief and represented to the court below that the notices were deficient.

The trial court ruled that the notices were insufficient and proceeded to continue to allocate milk to either Class I or Class II, and set out guidelines for allocation and payment. The court's order in this respect is as follows:

"The audit report which was the basis of Official Notice No. 1704 discloses that the difference between amounts petitioner paid its producers and the amounts respondent has ordered petitioner to pay results from differences in determining the quantity of milk for which petitioner may pay the lower price established by the Board for Class II milk:

"The current definitions of Class I and Class II milk are set forth in the Milk Board's Official Order No. 2–67:

"Class I Milk:—is that quantity of milk purchased during any pay period from producer or producer-distributor or distributors by a producer-distributor or distributor which is sold in or used in fluid milk form except United States Government Milk.

"Class II Milk:—is that quantity of milk purchased during any pay period from producers by producer-distributors or distributors which is in excess of Class I milk as defined above.

"The differences between petitioner and respondent concerning the amounts of payments to producers for milk delivered in the month of October result from petitioner's inclusion in the quantity of milk paid for at the lower Class II price quantities of milk used and disposed of by petitioner in the following categories:

"1. Excess of milk picked up at the farm over milk received at the plant.

"2. Swill returns.

"3. Employee drinks.

"4. Transfers to ice cream plants.

"5. Plant usage or processing loss.

"6. Sour cream and dip sales.

"The court is of the opinion that milk used for employee drinks is within the definition of Class I milk and should be paid for at the Class I price. However, none of the other categories of use fall within the definition of Class I milk and petitioner should be permitted to pay for such milk at the Class II price.

"While this case was pending, audits of petitioner's records for the months of November and December 1967 and January 1968 resulted in respondent issuing to petitioner Official Notices Nos. 1512, 1513, and 1514. These later notices are similar to Official Notice No. 1704 and, by consent of the parties, the issues raised by the later notices have been included within the scope of this case. The Court is informed that the disputed quantities of milk in these later months include some milk transferred to cheese plants. Payment for milk transferred to cheese plants is governed by the same consideration as payment for milk transferred to ice cream plants.

"The foregoing views have been expressed for the guidance of the parties at the request of the respondent. * * *"

This appeal followed: It is the contention of the Board that although the court below properly ruled that the notices were insufficient, it had no jurisdiction to determine and rule on the allocations of milk to Class I or Class II categories.

It is the appellant's contention in brief that the Circuit Court, without any evidence, without any record, and without the issue being before it, set out guidelines for allocation in payment to producers.

Title 22, § 226, Code of Alabama, provides:

"Certiorari to review.—Any person affected by any order or action of the board [Milk Board] who deems himself aggrieved by any such order or act may within ten days after receiving notice of any such action or order, *have such order, or action reviewed by a writ of certiorari* by filing in the circuit court of the county wherein said action or order was taken or made, *a verified petition setting out the specific order or action, or any part or parts thereof whereby said person deems himself aggrieved, and such court shall only consider such matters as contained in the petition.* Upon such petition being so filed a writ of certiorari shall be issued out of such court, directed to the milk control board, requiring it to *file with the court the records upon which such action or order was made, and requiring said board to file an answer* to said petition within thirty days after service of said writ, and upon said board's filing said answer, *issue shall be joined* thereon without further pleading and the case considered on said petition, the record of said board, and the answer filed by said board,' but no new or additional evidence shall be taken or heard by the court." (Emphasis added.)

It follows then that the Circuit Court had before it a verified petition required by § 226, the records upon which the Milk Board relied in issuing its order in this case, and the Board's answer to the petition. Under that section the court is empowered to consider the case, issue being joined, and there was therefore no error in the court's having gone forward to review the matter raised by the petition for writ of certiorari.

The Circuit Court had before it all of the evidence that the Milk Board had before it when the Board issued the several notices which were reversed. It had be-

fore it all the facts stated in the verified petition setting out the use or disposition of the milk in question.

We see no reason why the Circuit Court should not have expressed itself with respect to the allocation of milk under the facts which were before it. The record before the court presented squarely the issue concerning the construction of the Milk Board regulations defining Class I and Class II milk. Of course, its decision is controlling only with respect to the facts shown by the record before it.

We think clearly that § 226, Code of Alabama, cited above, justified and indeed compelled the court to rule on these matters.

Affirmed.

LIVINGSTON, C. J., and COLEMAN, BLOODWORTH, and McCALL, JJ., concur.